OPINION
Michael A. Adams is appealing from the judgment of the trial court that affirmed the decision of the Northeastern Local School District Board of Education (hereinafter District) terminating Mr. Adams' employment with the District.
This matter is before us for the third time. The first time was when Adams appealed from a prior decision of the Clark County Common Pleas Court affirming the decision of the District that terminated Adams following a hearing on July 24, 1997. We reversed the Common Pleas Court on the grounds that Adams' due process rights had been violated when he was not allowed to confront his accuser (a former vendor), who had written a letter to the District stating that the certain items of value that vendor had given to Adams were intended for the school district itself. The vendor did not testify at that hearing, and Adams was not allowed to confront him. We therefore reversed and remanded the case to the Board of Education to conduct a hearing which complies with due process. That decision was rendered on December 4, 1998, Clark App. No. 98 CA 46, unreported.
The District did not provide a prompt rehearing. Mr. Adams filed a motion for contempt with this court on July 15, 1999. The District in its response indicated that it could not obtain the voluntary cooperation of the former vendor (a Mr. Games) to appear at the hearing and did not have subpoena power to compel him to appear. This court then entered an order to show cause on August 25, 1999, stating: "The Board is ordered to provide a hearing which meets due process standards. If it cannot produce Games as a witness subject to cross-examination, it should nonetheless proceed to conduct a hearing and proceed to act upon the evidence before it, e.g., the appellant's own admissions that he received gifts from the vendor."
The District then proceeded to conduct its second hearing on September 23, 1999, after which it voted unanimously on October 28, 1999, to terminate Adams' employment. The facts of this matter were set forth by this court in its prior decision on appeal, as follows:
 Appellant Mike Adams was employed by the Northeastern Local School District Board of Education from August 15, 1977 until July 24, 1997. Adams was employed in the maintenance department commencing in 1985, and subsequently became the Assistant Director of Maintenance and held that position at all relevant times to the within dispute (Ex. 11 at 56). Adams' duties encompassed purchasing decisions for the district, including establishing contact with vendors and determining which vendors to use for the purchase of substantial amounts of goods and services.
 On April 17, 1977, Superintendent Roger Compton received a letter in which was alleged that appellant had received a television, camcorder and other small items from a vendor and retained the items for his own personal use (Ex. 11 at 21-22). The letter was from Robert E. Games, Jr., the Owner of Adena Chemical Co., a former vendor to Larry Tatman, Administrative Assistant to the Director of Building and Grounds. (Ex. 1). After receipt of Games' correspondence, the Superintendent conducted an investigation into the matters raised in the letter (Ex. 11 at 11-16, 19-25) and, following a disciplinary conference on June 11, 1997, (Ex. 11 at 28-36), the Superintendent made the following determination which was conveyed to Adams on June 12, 1997:
 1. You have used the influence of your position for personal gain, in violation of the Ohio Revised Code.
 2. Through your employment with the Northeastern Local School District, you received items, namely an MTC 13 inch color television and a video camcorder, and kept these items for your personal use.
 3. You have engaged in behavior which constitutes a theft under the Ohio Revised Code.
 4. You have engaged in behavior which constitutes dishonesty, neglect of duty, or malfeasance under R.C. § 3319.081. (Ex. 5.)
 Based on the information received by the Superintendent from appellant and his union representative, Jennifer Romick, at the disciplinary hearing (Ex. 11 at 28-36), the Superintendent determined that a violation of R.C. § 3319.081, had occurred. As a result, appellant was suspended, without pay, for five days from June 12, 1997 through June 16, 1997, in accordance with Article 7.061 of the collective bargaining agreement (Exs. 3, 5, and 10).
 In response to the Superintendent's invitation to submit additional information, on June 15, 1997, appellant provided Superintendent Compton with a list of items that he had received from various vendors during his employment with the Board (Ex. 6). These items included, the 13-inch color television, a camcorder, numerous small knives, a cooler, a tool box, other tools and a calculator. At about the same time, appellant surrendered the television and camcorder to the District (Ex. 11 at 30).
 *2 At a meeting of the Board held on June 16, 1997, action was taken upholding the suspension without pay for the dates June 13 through June 16, and further suspending Adams' employment contract without pay effective June 17 until July 24, 1997 (Exs. 7 and 9). The suspension was continued at the request of appellant's union representative and the hearing before the Board was delayed until July 24, 1997 (Exs. 8 and 11 at 39, 45-48, 53).
 After the hearing, the Board deliberated in executive session and returned for an open session during which it voted 5-0 to terminate appellant's employment contract (Ex. 11 at 101).
* * *
 *3 Appellant testified at the Board hearing that no one connected with the school district ever told him it was improper to accept any type of gift from an outside merchant. (Tr. 56). Appellant testified that Robert Games told him that he knew a guy who owned a warehouse full of items and could get him a television for appellant's place of business, Adam's Carry-out. Appellant testified that he asked Games how much the television would cost, and when Games replied "fifty-seventy-five dollars" he told Games to get him one., Appellant testified that Games later delivered a television to the carry-out and refused to accept payment for it. He said Games never told him the 13-inch television was intended for the school district. (Tr. 59).
 About a year later appellant later said he told Games his wife was going to buy him a video camera for Christmas, and Games told him he could buy the camera for a couple hundred dollars. He said he told Games to get the camera and his wife would pay Games for it. Appellant said Games later brought the camera to his business and refused payment for it. (Tr. 61). He said Games never told him the camera was intended for the school district. (Tr. 61). Appellant stated he would never have taken the camera and television if he knew they were intended to be the school district's property. (Tr. 62). He also stated that school purchases from Games did not increase because he gave appellant the camera and television. (Tr. 62). In fact appellant testified he stopped making purchases from Games not long after he received the video camera. (Tr. 63).
 On cross-examination, appellant said he received the television in the Spring of 1994 and the video camera at Christmas 1995.
Exhibit A in the appendix of the brief of appellee.
At the second hearing, there was no evidence presented that the former vendor had given Adams the camcorder and video which were intended for the District. Rather, the evidence established was from Adams' own admissions as follows:
1. The Board warned Adams or other employees that it was improper and a violation of the Ohio Revised Code to accept anything of value from parties dealing with the District that might influence them. In fact, the evidence presented at the second hearing proved without a doubt that many other employees of the District routinely received gifts whether inconsequential or of some significant value from parties doing business with the District.
2. Adams accepted a camcorder and a small television set from the former vendor, but only after agreeing upon a purchase price which the vendor later would not accept.
3. At the time Adams ordered and received the above items, he was the owner of a carry-out and ordered supplies from that same vendor for such business.
4. The vendor delivered the above items to Adams' personal place of business.
5. The items were not intended for the District.
6. The acceptance of such items never influenced any decision of Adams as to the vendor in question.
7. The items received by Adams as gifts were received more than a year and a half prior to his termination.
8. Adams was no longer employed in a position where he ordered supplies from vendors at the time of termination.
9. Shortly after receiving the items in question from this vendor, Adams quit doing business with that vendor due to his failure to make good his guarantee of another item the District had purchased from the same former vendor.
10. The District was well aware that other employees had received gifts from parties dealing with it yet they were not disciplined at all.
In spite of the foregoing, the trial court found the decision of the Board was supported by "the preponderance of reliable, probative, and substantial evidence." (Trial court decision filed September 26, 2001, at 3).
Adams on this appeal brings the following two assignments of error:
 1. THE COURT BELOW ERRED TO THE PREJUDICE OF APPELLANT IN CONCLUDING THAT THE APPELLEE'S DECISION TO TERMINATE APPELLANT WAS SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE.
 2. THE COURT BELOW ERRED TO THE PREJUDICE OF APPELLANT IN CONCLUDING THAT THE APPELLEE'S DECISION WAS SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AS THE APPELLEE'S DECISION WAS UNCONSTITUTIONAL, ILLEGAL, ARBITRARY, CAPRICIOUS, UNREASONABLE AND UNSUPPORTED BY THE PREPONDERANCE OF SUBSTANTIAL RELIABLE, AND PROBATIVE EVIDENCE ON THE WHOLE RECORD.
 Our standard of review of the trial court's decision is more limited than the standard of review of the trial court. We are limited to determining as a matter of law whether the decision of the trial court is supported by reliable, probative, and substantial evidence and is in accordance with the law. McCray v. City of Dayton Bd. of Zoning Appeals (May 28, 1992), Montgomery App. No. 13168, unreported. We further stated in McCray that a decision supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence, and if there is evidence to support the decision of the Court of Common Pleas and the decision is according to law, the decision must be affirmed. Id. In the first appeal of this matter, this court stated at the end of its opinion that: "If the Board believed that the appellant misappropriated items meant for the school district, it certainly is a serious matter and is a legitimate ground for appellant's termination. If on the other hand, the Board, upon remand, chooses to believe the appellant's version of events surrounding the television video camera, termination of his employment after twenty years of faithful service may be inappropriate. The Board should then consider whether a lengthy suspension would serve the appropriate purpose of enforcing the provisions of R.C. 102.03(E)" [which prohibit a public official or employee from using the influence of office or employment to secure anything of value that is of such character to manifest a substantial and improper influence upon the official or employee with respect to that person's duties].
The case as presently on appeal does not present any issue as to violation of R.C. 102.03(E) because that section was not relied upon by the Board in rendering its decision and, furthermore, the District has accepted the fact that many other of its employees have received items of value from vendors or persons dealing with the District. Rather, the District relied on Adams' alleged theft from it in rendering its second decision that terminates his employment. This was acknowledged by the District in its counsel's brief to the trial court when counsel stated: "After careful consideration and deliberation, on October 23, 1999, the Board believed that Plaintiff-Appellant misappropriated items that were meant for the school district; based on the seriousness and severity of Plaintiff-Appellant's actions, the Board voted to terminate his employment contract." Appellee's brief, docket 12, at 11. This is a judicial admission and is binding on the appellee. State v. DavidPipkins (Feb. 9, 1996), Montgomery App. No. 15060, unreported, citing,inter alia, Bosworth v. Terminal R'D Association (1899), 174 U.S. 182,189.
This court has already determined, in the prior appeal of this matter, that if theft in office occurred, a termination was justified, but if there was no theft then a termination was not justified.
Our review of the evidence supplied to the District at its hearing reveals no evidence of theft whatsoever even though the Board, by admission, relied upon Adams' alleged theft as grounds for his discharge. Our statement in our previous opinion as quoted above that termination is not justified if there is no evidence of a theft is the law of the case. Layne v. Layne (Mar. 9, 1994), Champaign App. No. 93-CA-18, unreported, citing Weaver v. Motorists Mut. Ins. Co. (1990),68 Ohio App.3d 547. Since there was no evidence before the trial court whatsoever to suggest that Adams kept items that were intended for the District, its decision affirming the termination of Adams' employment is not supported by reliable, probative, and substantial evidence. The first assignment of error is sustained.
Moreover, since R.C. 102.03(E) was not used by the District in its decision, it has no applicability here. Furthermore, no other employee was ever informed that receiving gifts from parties doing business with the District was forbidden and the practice was apparently routine. We thus find, as a matter of law, that the termination of appellant was not justified and, furthermore, since appellant was engaged in a practice that was routinely used by many other employees of the District, we can find no valid grounds to discipline Mr. Adams. The judgment of the trial court is therefore reversed, and the case is remanded back to the court for it to order the District to reinstate Mr. Adams' employment with full back pay and, as his counsel stated in his brief, with all emoluments of employment lost as a result of improper termination, subject to set off of any income earned by appellant during his time of termination.
WOLFF, P.J. and BROGAN, J., concur.